All rise. Court is now in session. Please be seated. 3-14-06-06 People of the State of Illinois Advocate for Human Rights Mr. Schroeder, Scott Wilson Mr. Adidas, Rosario Good morning. Good afternoon, Your Honors. My name is Aditha Rosario-Moore, representing the defendant appellant, Gregory Scott Wilson, on behalf of the Office of the State Appellant Defender. This appeal concerns the dismissal of the defendant's successive post-conviction petition. As a brief syndicate, this is a case with a drawn-out, oftentimes convoluted procedural history.   with a drawn-out, oftentimes convoluted procedural history. The defendant filed a motion for leave to file in 2009. The motion was granted and then delayed for four years under Counsel Tom Sheets before the defendant went pro se and filed a petition, which presents a complex set of issues. So I'd like to give a brief overview of each of the issues that the defendants raised on appeal, clarify a couple of points, and then answer any questions you might have. So the defendant's first claim is that he made a substantial showing of actual innocence based on self-defense. Now, the Circuit Court found that he didn't. But the court erred in its decision for three main reasons. The first is that the court's decision was founded on a misapprehension of the defendant's self-defense claim. The judge said there was no evidence of self-defense because the defendant didn't claim that he stabbed Victor Williams in self-defense, and that instead the case hinged on whether the stabbing was an accident. But that reasoning is flawed because the defendant claimed self-defense as to the acts preceding the stabbing, which were presented at trial and which are outlined in the defendant's opening brief on page 25. In essence, the defendant was trying to buy drugs from Mr. Williams while in his car, and he drove off during the deal because he was threatened by a man named Jonathan Pickett, who was also there. Williams jumped onto and into the car, struggled with the defendant for control of it, hit him in the eye, and threatened him. The defendant grabbed a knife from under the seat, the car was swarming, it spun, it hit the curb, it knocked a tree over, and in that chaos, Mr. Williams was stabbed. So the defendant relied on a theory of self-defense as to those acts preceding the stabbing and accident as to the ultimate incident. The jury was instructed on self-defense, and the prosecutor at trial asked for the instruction on reasonable versus unreasonable self-defense, and so that was definitely an issue. Second, the court erred in failing to consider all of the evidence, old and new, when assessing whether the newly discovered evidence that the defendant attached to his petition, which was Raymond King's affidavit, would probably change the result on retrial. Now that's the standard in People v. Coleman, and King's affidavit needed to be newly discovered material, non-cumulative, and of such conclusive character that it would probably change the result. King attested essentially to lynch evidence on Williams. He attested that Williams and Pickett had reputations as stick-up men, that they had tried to break into King's house, that they were gang members in Peoria, and that Williams was a crack addict who sold fake drugs. Now the circuit court agreed that this was newly discovered material, non-cumulative evidence, but found that it would probably have not changed the result, and in part because the court didn't consider the other evidence that the defendant had attached to his petition. Now that evidence included an affidavit from a woman named Helen Sanders, who also corroborated the defendant's account of self-defense as to the preceding acts. Now she testified at first post conviction, and he attached this along with evidence of Williams' conviction for a violent robbery. Now the court here said it wouldn't consider this evidence because it wasn't newly discovered, because Sanders' affidavit had been litigated, and the Lynch evidence could have been discovered due to due diligence. But it didn't need to be newly discovered for the court to consider it in assessing whether or not King's affidavit would have probably changed the result in retrial, because the court was to consider all the evidence old and new. And in fact, some of that, the Lynch evidence anyway, is a part of the defendant's second claim. And so, the third reason that the court aired here is that it found that no one knew what would have happened inside the car besides the defendant and Williams. But if that were of any import, that would mean that the Lynch evidence could never be instructive, because Lynch evidence by its very nature is circumstantial. It's not direct evidence. It's circumstantial evidence that goes to whether the victim was the aggressor in the case. And so that's a brief overview of the first issue. The defendant's second argument is that the court should have sui sponte allowed him to amend his pro se claim of ineffective assistance of post-conviction counsel. Now, it's true that that claim itself is not cognizable in a post-conviction petition, but the record indicated the true nature of the defendant's claim. He wrote, ineffective assistance of post-conviction counsel, quote, when defense counsel failed to investigate evidence that should have been discovered in first post-conviction. You mean the armed robbery conviction that wasn't discovered? Yes. Yes. And also the information that it had been a violent robbery, which he attached to the victim's affidavit as well. So the defendant was essentially claiming that his trial counsel, Collette Bailey, should have discovered this evidence, and that the reason he didn't raise this ineffective assistance of counsel claim sooner was because his first post-conviction counsel also failed to discover that evidence during first post-conviction proceedings, in which he was claiming ineffective assistance based on a failure to investigate the case. So essentially, when a defendant is charged with murder and self-defense is at issue, one of the first stops is to determine what kind of victim we have here. It's essentially a background check to see if there are any convictions, and then a brief investigation into the nature of that conviction. And so it was an obvious, easy thing that trial counsel didn't do, post-conviction counsel didn't do, and it would have likely made a difference in this case. And so this is essentially the defendant's claim. And if he had not been pro se, counsel would have phrased this claim correctly, but he was pro se. And so, in Defendant's Opening Brief, we outline the procedural history to understand why he went pro se. It wasn't just a simple issue of he wanted to represent himself, but this was a case that lingered, almost in a sense was kicked around for four years. He filed his motion for leave in 2009, was granted, counsel was appointed, and it was assigned to Tom Sheets in fall of 2009. And at some 11, counsel filed a Rule 651C certificate representing that he had made the necessary amendments to the defendant's petition. But no petition had been filed yet. During this time, the defendant also wrote numerous ex parte letters to the judge asking the court to compel Sheets to address the case. He said he had not had any contact with him. He tried to file his own amended motion and petition because he had essentially hired an investigator himself and he found the lynch evidence. What lynch evidence? Because I think there's two sets of lynch evidence. Right. Williams' conviction and the accompanying affidavit from the victim. In the first armed robbery. Yes. But not the second affidavit from the man who said he walked up to the porch and he knew he was a bad guy. Mr. King. Yes. Well, he found both by hiring his own investigator during this time. Found King. Right. And then he hired an investigator and found the conviction. And then subsequently found the affidavit from that victim. And so it wasn't until fall of 2013 that the defendant was finally brought to court because Mr. Sheets wanted to inform him of a potential conflict of interest that he had with First Post Conviction Council. He wanted him to waive it. So the defendant was able to tell the court, look, I want to go pro se. I want to move my petition forward. And the court allowed him to do so. And it's no wonder that he wanted to do so given the neglect of the case and also that the case slipped through the cracks. Neither the court nor the state recognized how long this case went on. And at one point the defendant said to the court, I want to go pro se because of what happens every time I get appointed counsel. And I'm also claiming deficient counsel. And at that point things got messy. He had to file an amended motion for leave and the case got transferred to another judge and the defendant had to go over the procedural history. The record indicated that there were numerous misunderstandings but the defendant finally was able to file his petition. And he addressed this issue at the hearing. He argued the claim and he made it very clear that what he was claiming was ineffective assistance of trial counsel for failing to discover linch evidence. So those are the two main issues here on appeal. I want to just go back to the first issue and just clarify a point. The state in its responsive brief said that King's affidavit wasn't lynch evidence because there's no conflicting accounts as to what occurred. But that's a misrepresentation because as to the acts preceding the stabbing, there were definitely two different accounts. The state maintained that the defendant drove off of his own accord because he wanted to steal a small amount of drugs that Mr. Williams had put into his hand and that he, as the defendant drove off, he for some reason grabbed onto the side of the car and was hanging onto it for dear life. But the defendant said that Mr. Pickett had threatened him and said, if you drive off, I'm going to shoot you. And then made a motion as if to grab a weapon, which scared the defendant, and he drove off. Williams jumped onto and into the car and was in the car, chest deep, struggling with him for control of it. He hit him in the eye. He threatened him. The defendant said, I'll slow down. You can let go. He said, no, you're effing dead. And they continued to struggle, at which point the defendant pulled out his knife. And as I explained before, chaos ensued and Mr. Williams was stabbed. So these are two different accounts. And even the court said in its order, there was considerable evidence for the juror to consider what was contrary to the defendant's version. So that's the main point that I wanted to clarify on the first issue. If there are no other questions, I'll reserve my time for rebuttal. Okay. Thank you. Mr. Genetovic. Any points of court? Counsel? Indeed, this is a very convoluted case from a procedural standpoint. The defendant filed, you have to keep in mind, this is the second successive PC. The first PC was litigated by him and Hannah. Counsel who found by going through the court file and what was there found the witness, Helen Sanders, got her affidavit. She testified. Court denied PC. This court affirmed specifically finding that Helen Sanders' testimony wouldn't have made any difference. It would not have changed the outcome. So it affirmed the denial of post-conviction relief. So with respect to Helen Sanders and the effect of whatever she had to offer, which was simply the fact that she saw somebody's things she said, his outside the vehicle. So in other words, he was inside the vehicle. We already know that as a fact. So, the whole thing is, what it gets down to is, that is raised through the cut. So that's done and over with. That's out. Raymond Paul and the criminal history of the victim. Let me back up a second on that. So if you come in with newly discovered evidence, are you suggesting that then you can't look at that newly discovered evidence in light of the other evidence which a court previously ruled wasn't sufficient to warrant a new trial, or do you look at the big picture? Even looking at the big picture, that conclusion has already been made with respect to the effect of her testimony. And what we're trying to determine here is we're trying to determine what is newly discovered evidence in this case and what isn't. And Helen Sanders isn't. And so what we have to do is now we have to look at the other two pieces which the trial judge in this case found was not newly discovered because with due diligence it could have been. So the only thing we're left with here with respect to newly discovered evidence, and so-called lynch evidence, that so-called tends to prove actual innocence is the affidavit of Raymond King. That's all we have. But are you saying that we can't consider that in a conjunction with Sanders? No, I don't think you can at this point. In determining the legal sufficiency of the petition to determine whether or not the newly discovered evidence that actually is newly discovered evidence does that all by itself. Because the thing about this is counsel it struck me, it struck me in the briefing, it struck me what counsel said here. Talking about the fact that defendant acted in self-defense. The thing is, the only person's name that I heard that had anything to do, that associated anything at all with any kind of the defendant, was Pickett. I never heard the name Victor Williams. And if you take a look at the brief, if you take a look at the reply brief, I believe it's at page 3 or 4, there's only two things that the defendant claims that this victim did that supposedly put this defendant in reasonable apprehension of receiving rape out of harm or being killed by the victim, Victor Williams. One, Victor Williams approached the car. Now there's no great discovery there because the defendant was in the vicinity for the purpose of buying drugs. And if Victor is going to sell him drugs, of course, Victor is going to do what? He's going to approach the car. I don't think approaching the car puts anybody with any kind of reasonable apprehension under these facts anyway of rape out of harm or death. The second... I'm getting to that. The second point, the second thing that they talk about is the fact that he's hanging under the car. Now that is a fact. What you take and draw from that fact and how you determine it. Basically, Victor is selling this guy drugs. He's putting drugs in his hand. According to the testimony that's unconfirmed, it's the same from the defendant as it is from Pickett. The victim is already inside the vehicle, if you will. Obviously having to bend down, obviously having to be inside the vehicle passing the drugs. When you take a look, of course... Why would he have to bend down? Just anecdotally, Mr. Lewis, 40 years ago, I was a cop in that neighborhood, so I know exactly what's happening. So if somebody's doing a drug deal, why does the person have to lean down and get into the car to hand drugs to the driver? I am not that tall. But if I stand outside my car and try to do something, my head is above here. I'm going to be down looking inside the vehicle. I'm going to be transacting business. I'm going to be... And back in that job, I was passing stuff back and forth between drivers, who's the driver's license, stuff like that all the time. And never once did I feel the need to stick my upper torso into the car. Well, the whole thing is, if he was bent down and he was doing that, and at the time he was in the process of giving him drugs or in the process of trying to get the money or what he thought was money, what we have here is, we don't have the defendant simply driving away. The defendant himself testified that he put the car in gear and basically floored it. Now, there are a couple different reactions you could take if you had that. One would obviously be what? To back away. The other would be is if you are on the car or somehow in the car or whatever you are doing business leaning in the car, doing your thing, and that happens, your next reaction might be, especially if that's that fast and that quick, would be to grab onto the car. Basically to hang on for life. And so, but, my question is hanging onto the car for whatever reason, does that place the defendant in a reasonable apprehension of receiving great public harm or death at that point while he's driving the car? If he's saying, I'm trying to stop you here and my buddy's got a gun and he's going to shoot you, if you're trying, let's suppose I think your friend over there's got a knife and gun and I'm trying to get out of there and you're trying to detain me, can I injure you, use force to get away from you and self-defense even though I think if your pal is coming over to kill me, that you're trying to hold me there for your pal, would it be self-defense to use whatever force is reasonable at the time to get away from you? I mean, your factual scenario, I would say you could. But is that the factual scenario here? He's holding out, he was trying to do a car transaction, the guy takes off, he's holding on to the car and all of a sudden the guy says to him, I'll let you off I'll stop the car if you just get off and of course he says, you're effing dead. Well, I put myself in that same scenario if I'm hanging off of my good life within that kind of situation, I might take and say exactly the same thing to him. If I was... You could, but let's take into account who we are speaking about and what was going on with the drug transaction, etc. I don't think it is unreasonable that someone such as Victor Williams would say something like that. But I don't think that that necessarily puts the defendant in any kind of danger at that point. He sees no gun, young, Pickett said something but Pickett said something to him. What we're talking about is he is claiming self-defense against somebody who did absolutely nothing to him other than try to sell him drugs. And that's the problem that I have with this whole idea. Well, he's partnered up with the victim. Pardon me? But he's partnered up with the victim. Just like the scenario I just gave you. Your friend over there says, you're trying to restrain me and this guy says I'm going to come over and kill you. So you say the threat's from over there but you're the one trying to hold me there so your friend can do me any harm. But that's not, but again, that scenario is not what we have here. If you're trying to, if I was trying to take an apology so somebody could take and do something to you, yes. But I don't think that Williams is trying to hold a speeding car going down the street which you're hanging on so you don't fall off and get killed. I don't see that as him trying to hold this guy to anything. Your scenario, I cannot argue with, but your scenario is not what we have here. But with these evidence, now we've got evidence that this guy's a bad guy, he's an armed robber. And which makes the defendant's story a little more credible. The fact is, neither side of this transaction were... Neither one of them are angels. But that's normally the way it goes. And so it would seem reasonably that when you take this new evidence and that newly discovered evidence that this guy wasn't just a drug dealer on the street, but he was also an armed robber. And that it makes the defendant's self-defense story a little more credible. And in fact, I think a lot more credible. I don't see it being any more credible with that evidence and the fact that Victor Williams was trying to sell him drugs at whatever hour of the day it was to begin with. I think the jury already knew what they were dealing with. And the jury was already able to assess Victor Williams' character and credibility and whatever was going on. And I don't see this piece of evidence coming in and actually reasonably changing the verdict. And what we're talking about here now and I think this is also crucial is that this claim is being made as a claim of actual innocence. And self-defense is an actual innocence claim. That is correct. But not a reduction in the crime for which you have committed. And so the major part of his argument to the trial judge here was well, you know, this evidence it may not show that that was really self-defense, but at least it would help reduce it to second-degree murder. Which he already got an instruction on and which the jury has already instructed on self-defense and the jury rejected. Actual innocence does not allow simply to take a single because of the fact that maybe if this evidence had come in maybe he would have gotten second. No, this is actual innocence. This has to show not so much that his belief was reasonable that he could use it but that it can't be used to take and justify second-degree murder. Well, but that assuming the case went back that would be a limitation on the trial. You're left in the defense of actual innocence and no lesser-included second-degree murder. To be honest with you, I never really gave that much of a thought and I don't know if that would be something that the court would be able, the court's ruling would extend that far. I mean, that's that is going beyond what the actual innocence is in the PC by saying that, you know, is it would this evidence likely change the outcome of the case on a retrial? Would the jury have actually acquitted him? I don't think simply the fact of some strong-armed robbery, the different facts of the scenario, etc. is going to take and do that under the facts of this case and under the facts in the evidence that was presented here. Because the defendant gave three conflicting statements to police before he finally came up with the one he actually came up with here and would he finally eventually testify to a trial. But nowhere does he ever state that he felt threatened by the victim. Thank you. And so, under these facts and under this scenario, I don't think that, first of all, I don't think that this qualifies as false evidence on the facts. I don't see the factual the conclusions that we draw from the facts are different from the facts themselves. The factual scenario as a whole as testified to by Pickett and as testified to by the defendant are pretty much consistent. Why he held on is a conclusion to be drawn from the facts itself. And so, unless the facts are in conflict, only then does the lynch evidence come in. I don't think the lynch evidence even comes in. And so, under the argument that I presented in the brief, as well as my comments here, we think that the trial judge correctly decided that King's affidavit, although  and even if it's considered as lynch evidence, would not have changed the outcome, probably would not have changed the outcome on the retrial and therefore granted the state's motion to dismiss. And there was one other comment I wanted to make. With respect to the petitions, the reason why we had a problem with the first successive PC was because of Johnson's affidavit. And then, what happened was, someone finally realized on the defense side that Johnson claimed that what we saw, he saw, you know, the defendant getting hit, there was a fight on the street where this drug transaction went. The problem was, Johnson's affidavit was kind of hard for him to be at that location seeing all this because he was in jail at the time. So Johnson's affidavit is not part of the second successive post-conviction? No. That was part of the problem. That's the reason why things got delayed. And then the state did object, saying they're trying to add a new claim, something new, and he can't do this. He was given limited permission to do this with the first successive PC. And so, on a procedural basis, it was a quagmire. It was terrible. And so, what happened was, the defendant then filed the second one, and in the second one, rather than use Johnson's that he couldn't use because it was factually inaccurate and couldn't be used, substituted that for King. And I thought, and I could be wrong on this, I'm not sure, I thought that they found King. I didn't think that the investigator found King. I thought somehow that the defendant and King hooked up in some kind of which is a little bit different than the investigator finding. Now, like I said, I could be getting this mixed up with another case, but I think that's exactly what happened in this case. Let me go to the King affidavit. Does it indicate that the defendant excuse me the victim the victim was carrying a weapon when he approached the door? I don't think so. So, did did the defendant testify that the victim had a weapon to justify deadly force? No. Basically basically basically the defendant said he saw no weapon. Not only did he not see a weapon in Boylan's hands, he didn't even see a weapon in Pickett's hand. He saw no weapon at all. Hypothetically, the prior armed robbery conviction is not newly discovered evidence because it could have been discovered. So that comes up in terms of ineffective assistance of counsel. But this defendant in the second successive post-conviction petition raises a new creative theory that it wasn't an armed robbery conviction, it was just him coming up to the door and carrying things. So that would not be previously easily discoverable because it didn't result in a conviction. That's how the theory goes. Do you have any dispute with us considering the three affidavits that were attached to the second successive post-conviction petition because it does involve I forget the woman's name, her affidavit. Sanders? Helen Sanders? I do have a problem with that because of the fact that the rule for newly discovered evidence is that it could not have been found without not through the exercise of due diligence. And because this could be something through due diligence at the trial level and because it could have been found therefore it's not it can't go back to trial council it can't go back to PC council it has to go back to trial council and if you take a look council had cited the case of Coleman and if you take a look at Coleman, what's interesting there is there's two sets of affidavits, two sets of people involved a group of people who basically testified, well we weren't there we don't know, I don't know, and I don't know if the defendant was there or not. The Supreme Court said that is not newly discovered evidence, that is not evidence that is really pertinent to a claim of actual innocence. I am basically likening Raymond King's affidavit to that as opposed to the second group. The second group were five people that were involved in the crime and they said defendant wasn't there. That's newly discovered evidence of actual innocence because actual innocence contemplates eyewitness, scientific, DNA something along those lines, not an affidavit along those lines and so thank you I just want to clarify one point, the defendant filed the first post conviction petition and he filed one successive post amended motion for leave it was granted and no petition was filed there was never a there was never a right and the defendant when the state argued you have to file an amended motion for leave he argued that he didn't have to but Judge Corey found that he did and so he did and he said I would actually like to attach my petition to that and the state said no you can't of course you can attach your petition to so this was a part of what happened things got dragged out, they went on much longer than they needed to, motion for leave was granted and by that point the case got transferred and the state in those proceedings in the transfer to Judge Brown actually said it was his third successive petition so this is a part of the confusion and a huge part of why the defendant went pro se because he wanted to streamline and make things simple I also want to just address the state's argument that he needed to file this amended motion for leave because of what happened with Johnson's affidavit now it wasn't the defense that figured out anything about that affidavit because Tom Sheets didn't do anything on this case it was the state who represented at one of the many hearings that they found evidence that Johnson had been incarcerated at that time there was nothing presented there was nothing in the record to say that but even so if defendant had been represented by counsel there would be nothing wrong with counsel investigating the petition adding new claims adding new evidence that's essentially what the defendant did here so filing an amended motion or a new motion or a new petition is just complicating what counsel could have done on his own. The law sets a minimum of what counsel has to do not a maximum and so I don't think it was a legitimate objection just because the defendant attached a different affidavit and new evidence I'd also like to go back to Helen Sanders affidavit she was listed as the only other witness besides Mr. Pickett in the police report. It was a very obvious oversight on behalf of trial counsel and again finding Williams' conviction is a basic background check the court at the evidentiary hearing on the first petition found her to be credible they didn't say she wasn't credible what they found was that she would not alone her affidavit alone and her testimony alone would not have made a difference now this court affirmed that decision and Justice McDade dissented and said I beg to differ, it would have made a difference because it corroborated what the defendant said, that there was a man in the car and as the state pointed out up to his booty, wiggling around with the car swerving and so there's something else going on there besides what the state presented at trial which is a man hanging on for dear life of course she doesn't see what's happening inside, but she sees enough to corroborate and essentially make a difference. Now, we're not just considering that alone anymore and the defendant never said this was newly discovered evidence, he's saying this is a part of my proceedings this is old evidence we should reconsider it in light of the new evidence that I've attached and that's what that new evidence is it's King's affidavit and how does King's affidavit dovetail with the woman, Sanders with her affidavit they both Sanders makes King's affidavit more credible because she's basically, King is attesting to the victim's violent character so this attempted robbery of his house he just walked up the sidewalk and rang the doorbell and the guy scared him off that's not the only thing that he puts in his affidavit, he also says that he's a drug dealer and a gang member in Peoria and gang membership has some association with violence they didn't know he was a gang member there was no evidence of that but again, we're not just looking at that evidence we're looking at all of this together and I'm trying to understand what all of this together is, Sanders King, but not the fact that trial counsel missed the armed robbery conviction because that's ineffective assistance I don't know that we need to parse it out this way because of course the defendant would have loved for all of this to have been presented in his first petition, it's not his fault that it wasn't, and it seems a technicality to exclude it it's something that should have been discoverable and if ineffective assistance of counsel is found, we're saying in essence it should have been discoverable and on retrial, it's there now that is evidence that would be presented thank you on retrial, so they would have Sanders affidavit on retrial, they'd have the conviction and they'd have King's testimony if he's credible, which is why we need an evidentiary hearing here I just also want to clarify that the defendant did say initially in his first videotaped statement with police that he was afraid of Williams and he was afraid that he was going to be robbed and we also state in the brief that there was struggle for control of the car the defendant was hit in the face he was told, you're effing dead when he said, I'm going to slow down, you need to get off the car he's aggressively driving away from the situation and so he, under the circumstances very clearly said he felt threatened by Williams, and Pickett is relevant insofar as he also threatened and created these threatening circumstances whether or not that's reasonable or unreasonable it's for a jury to decide the jury rejected self defense though, I know that there's a theory here about how Justice Schmidt wouldn't have to reach into a car, but isn't there another plausible explanation that the defendant in this case grabbed the hand with the drugs in it, and was going to just take them I don't think there was any evidence that he grabbed anyone's hand there was evidence presented that a small amount of drugs was poured into his hand by his testimony right, and also the jury during deliberations asked for clarification on unreasonable versus reasonable self defense, so they were considering it alright okay thank you so much thank you both for your arguments here the matter will be taken under advisement a resolution will be issued and we'll be in hopefully a brief recess for a panel session thank you